J-S70024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JENNIFER CLARK | |
| Appellant | No. 1074 EDA 2014 |

Appeal from the Judgment of Sentence March 6, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0005312-2012

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED DECEMBER 02, 2014**

Appellant, Jennifer Clark, appeals from the March 6, 2014 aggregate judgment of sentence of three to 23 months' imprisonment, imposed following convictions for theft by unlawful taking or disposition and receiving stolen property.[1]  After careful review, we affirm.

The trial court has set forth the relevant facts and procedural history as follows.

> Mrs. Nancy Roberts has, since 2006, lived in an apartment in a residential complex for senior citizens, known as Shannondell in Valley Forge.  At all times relevant to this case, [Appellant] was employed by Angel Companions, a business firm that

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3921(a) and 3925(a), respectively.

provides home services to the elderly. While so employed, [Appellant] was in Mrs. Roberts' apartment from 6:00 a.m. to 8:30 a.m. on June 2, 2012. At 10:00 a.m., Mrs. Roberts' daughter Sally arrived, and as soon as she did, Mrs. Roberts told her, "I've been robbed."

The two took inventory of Mrs. Roberts' jewelry and determined that several items were missing. All were gold. The total value of the missing jewelry amounted to $32,773.68. They reported the loss to the security officer working for Shannondell and the Lower Providence Township Police Department.

The apartment where Mrs. Roberts lives is on the third floor of her building, about fifty yards away from the elevators, past the doors of five other apartments. The building is only one of several residential buildings on the campus. In order to get to the doorway of the bedroom where Mrs. Roberts sleeps, one must enter the building, go to the third floor, open the door to her apartment and pass through a hallway, her living room and another hallway.

On the evening before Mrs. Roberts discovered the loss, she was visited by another of her daughters, Gina Edwards. While there, Mrs. Edwards looked at her mother's jewelry, some of which was kept in small containers on top of a bureau. She saw some of the items of jewelry that her mother discovered to be missing the next morning after [Appellant] left. She worried about a particularly valuable "serpentine bracelet" because Mrs. [Roberts] kept it in a small box on the top of her bureau, rather than in a relatively more secure location, such as her jewelry box in the bureau drawer. Mrs. Roberts testified that the bureau is only a few feet from the foot of her bed. She also described herself as a light sleeper, who would normally wake if a person were to open the door to the apartment.

Mrs. Edwards testified that she helped her mother, Mrs. Roberts, to bed that night. Mrs. Edwards said she left her mother's apartment at approximately 10:30 p.m. on the evening of June 1st, and on the outside of the apartment door left a note to [Appellant], the Angel Companions employee who was scheduled to arrive the next morning. [Appellant] had never met Mrs. Roberts or worked in her apartment before. The note asked [Appellant], by name, to enter and wake her mother if she was still asleep. Mrs. Edwards did not remember whether she locked the door to the apartment when she left, but according to Mrs. Roberts, by ten thirty in the evening there is not much pedestrian traffic in the halls of Shannondell, as the residents "don't stay up late or [they] stay in their apartments."

The parties stipulated that about a dozen employees of Shannondell who had a master key to all of the apartments were on the premises during the evening of June 1st or the morning of June 2nd, 2012. The parties also stipulated that two un-solved thefts occurred at Shannondell, one on March 3, 2012 and the other on June 29, 2012. One was a theft of two candlesticks from a resident's apartment, and the other was a theft of personal items from the locker of a Shannondell employee.

[Appellant] arrived at approximately 6:00 a.m. on the morning of June 2, 2012. After she arrived, [Appellant] did not always remain within the sight of Mrs. Roberts. One of the things [Appellant] and other Angel Companion aides were to do for Mrs. Roberts was to make her bed. Mrs. Roberts did not specifically remember telling [Appellant] to make the bed, but she remembered that [Appellant] entered the bedroom to help her shower and dress. The dresser with the jewelry was to the immediate right of the entry to her bedroom.

When Mrs. Roberts was in another bedroom, she called for [Appellant] to help her. She called several times, but [Appellant] did not respond for approximately ten minutes. The delay seemed

- 3 -

unusually long to Mrs. Roberts, and she wondered silently why [Appellant] did not respond sooner. Mrs. Roberts opined that if the clothes washer and dryer were running it might have been possible that a person in another room might not have heard her first call, but would have heard her subsequent calls.

While [Appellant] was in the apartment she said something that stood out to Mrs. Roberts: that it was such a long drive to Shannondell that it was not financially worth it to have made the trip for such a short visit. Within an hour after she left, Mrs. Roberts discovered that some of her jewelry was missing: while looking for a particular piece, she noticed that "the earring box had vacancies in it." Then she looked in the containers on top of the bureau and saw that the serpentine bracelet was also missing. Mrs. Roberts testified that she wears jewelry daily and changes it daily, thus she checks her jewelry every day. She described each piece of jewelry she discovered missing, and all were gold.

When the police investigated the theft, they found that no surveillance video was available. The police did not try to obtain fingerprints from the remaining jewelry or jewelry containers. They did not attempt to "cross-reference" the employees who were working at the time of this theft with those who were working at the times of the other thefts on March 3[r]d and June 29th.

The police contacted numerous pawn shops in the area but none reported inventory matching the descriptions of the missing pieces of jewelry. [Appellant] had a couple of outstanding loans from a pawn shop, but none of the items taken from Mrs. Roberts were found in her possession. A search of the call log of [Appellant]'s cell phone did not show that she had called, or received calls from, pawn shops.

The police telephoned [Appellant] on the day Mrs. Roberts reported the theft, the same day she had gone to Mrs. Roberts' apartment. When the

- 4 -

investigating detective identified himself and said he was calling about a theft at Shannondell, she spontaneously asked whether the theft occurred at the apartment of Mrs. Roberts. She agreed to meet with the detective to discuss the theft, but said she was too busy to meet that evening, and stated that she was in a meeting and would have to call him back. She never called back. The detective called twice more before she returned his call and left a message via voice mail. When he called her back, she did not answer.

When the police arrested [Appellant] on July 13, 2012, she agreed to answer their questions, and did so for approximately three hours. During that time she denied the allegations against her, although the detective characterized her denials as "weak."

Trial Court Opinion, 6/17/14, at 1-4.

On November 22, 2013, a bench trial occurred, at the conclusion of which Appellant was found guilty of the aforementioned crimes. On February 28, 2014, prior to sentencing, Appellant filed a motion titled as a "Post-Verdict Motion in Arrest of Judgment and for a New Trial[,]" challenging both the weight and sufficiency of the evidence. The trial court never ruled on said motion. Thereafter, on March 6, 2014, Appellant was sentenced to three to 23 months' imprisonment. On April 7, 2014, Appellant filed a timely notice of appeal.[2]

---

[2] We observe that the 30th day fell on Saturday, April 5, 2014. When computing the 30-day filing period "[if] the last day of any such period shall fall on Saturday or Sunday … such day shall be omitted from the computation." 1 Pa.C.S.A. § 1908. Therefore, the 30th day for Appellant to file a timely notice of appeal was on Monday, April 7, 2014. As a result, we

*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issue for our review.

> Whether the evidence presented at trial was insufficient as a matter of law to establish beyond a reasonable doubt that [] Appellant had committed the crimes of Theft by Unlawful Taking and Receiving Stolen Property[?]

Appellant's Brief at 4.[3]

Our standard of review regarding challenges to the sufficiency of the Commonwealth's case is well settled. "In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt." **Commonwealth v. Patterson**, 91 A.3d 55, 66 (Pa. 2014) (citation omitted). "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." **Commonwealth v. Watley**, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citation omitted), *appeal denied*, 95 A.3d 277 (Pa. 2014). As an appellate court, we

*(Footnote Continued)* _____

deem her appeal timely filed. Further, Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

[3] Appellant's brief does not contain pagination. For ease of review, we have assigned each page a corresponding page number.

must review "the entire record … and all evidence actually received[.]" ***Id.*** (internal quotation marks and citation omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Kearney***, 92 A.3d 51, 64 (Pa. Super. 2014) (citation omitted), *appeal denied*, --- A.3d ---, 385 MAL 2014 (Pa. 2014). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." ***Id.*** (citation omitted). "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013) (citation omitted), *cert. denied*, ***Diamond v. Pennsylvania***, 135 S. Ct. 145 (2014).

Instantly, Appellant asserts the evidence was insufficient to establish she committed each of the material elements of the crimes beyond a reasonable doubt because the evidence presented "was purely conjecture and speculation without any evidence pointing to [] Appellant as the one committing the crime." Appellant's Brief at 7-8. Additionally, Appellant avers that "there was simply no evidence presented that [Appellant] actually stole any property or was in possession of stolen property." ***Id.*** at 8.

At the outset, we note that, "[i]n addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the

Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." **Commonwealth v. Brooks**, 7 A.3d 852, 857 (Pa. Super. 2010), *appeal denied*, 21 A.3d 1189. Furthermore, we are cognizant of Appellant's reliance on **Commonwealth v. Stores**, 463 A.2d 1108 (Pa. Super. 1983) for the argument that more than mere presence at the scene is required to find the evidence sufficient. Appellant's Brief at 10.

> While a criminal conviction may rest upon wholly circumstantial evidence, it may not be based upon mere surmise or conjecture. Evidence of mere presence at or near the scene of a crime is precisely the kind of circumstantial evidence that does require surmise or conjecture. Evidence of something more than presence at or near the scene of a crime is required to justify the conclusion that someone committed or participated in a crime.

**Stores**, **supra** at 1112 (internal citations and quotations omitted).

However, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the record reveals the evidence presented was sufficient to prove Appellant perpetrated the aforementioned crimes. Herein, the trial court authored an extensive, 12-page opinion that comprehensively discusses and disposes of Appellant's sufficiency arguments. Upon careful review, we agree with the thorough analysis of the law and facts as developed by the trial court in its June 17, 2014 opinion.

Specifically, the record supports the trial court's finding that Mrs. Roberts' daughter, Gina Edwards, was in her apartment on June 1, 2012, the night before the jewelry was discovered stolen. N.T., 11/22/13, at 15. On

that evening, Mrs. Edwards observed items that were later determined to be stolen were present in Mrs. Roberts' bedroom, where she slept that evening. *Id.* at 12. Mrs. Edwards testified that when she left her mother's apartment around 10:30 p.m. her mother was in bed. *Id.* at 17. The following morning, Appellant and Mrs. Roberts were the only people present in the apartment between 6:00 a.m. and 8:30 a.m. At some point Mrs. Roberts was in a second bedroom for approximately ten minutes calling out to Appellant who did not respond. *Id.* at 55. After Appellant left, at 10:00 a.m., Sally Roberts, Mrs. Roberts' daughter-in-law, arrived and Mrs. Roberts informed her that she discovered the items had been stolen. *Id.* at 12. Based on this circumstantial evidence, the trial court found the evidence was sufficient to convict Appellant of the aforementioned crimes. *See Watley*, *supra*.

Accordingly, for all the foregoing reasons, we adopt the portion of the June 17, 2014 opinion of the Honorable Wendy Demchick-Alloy addressing Appellant's sufficiency claim as our own for the purpose of this appellate review. Therefore, we affirm Appellant's March 6, 2014 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/2/2014

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    Nos.    CP-46-CR-0005312-2012

                v.                      :

JENNIFER CLARK                   :

## OPINION

DEMCHICK-ALLOY, J.                                     JUNE 17, 2014

Defendant-appellant was convicted of theft by unlawful taking or disposition, 18 Pa.C.S. § 3921(a), and receiving stolen property, 18 Pa.C.S. § 3925(a) and was sentenced on March 6, 2014. Defendant has filed a concise statement of errors complained of on appeal that appears to raise two claims of error: the evidence was not sufficient to support the verdict, and the verdict was against the weight of the evidence.[1] After reciting the material facts of record, this opinion will address the sufficiency claim and then the weight claim.

## FACTS

Mrs. Nancy Roberts has, since 2006, lived in an apartment in a residential complex for senior citizens, known as Shannondell in Valley Forge. At all times relevant to this case, defendant was employed by Angel Companions, a business firm that provides home services to the elderly. While so employed, defendant was in Mrs. Roberts' apartment from 6:00 a.m. to

---

[1] The concise statement consists of items numbered "1," "2," "2(a)," and "3." Items "1" and "2" expressly and unambiguously claims that the verdict was against the weight of the evidence. Item "2(a)" states both that the "Commonwealth failed to present sufficient evidence ... and the Commonwealth's evidence was based purely on speculation and conjecture[,]" which seems to first raise a sufficiency claim and then raise a weight claim. Item "3" states that the undersigned judge erred and abused her discretion by inferring guilt based upon certain evidence, which might raise either a sufficiency claim, a weight claim, or both.

8:30 a.m. on June 2, 2012. At 10:00 a.m., Mrs. Roberts' daughter Sally arrived, and as soon as she did, Mrs. Roberts told her, "I've been robbed."

The two took inventory of Mrs. Roberts' jewelry and determined that several items were missing. All were gold. The total value of the missing jewelry amounted to $32,773.68. They reported the loss to the security officer working for Shannondell and the Lower Providence Township Police Department.

The apartment where Mrs. Roberts lives is on the third floor of her building, about fifty yards away from the elevators, past the doors of five other apartments. The building is only one of several residential buildings on the campus. In order to get to the doorway of the bedroom where Mrs. Roberts sleeps, one must enter the building, go to the third floor, open the door to her apartment and pass through a hallway, her living room and another hallway.

On the evening before Mrs. Roberts discovered the loss, she was visited by another of her daughters, Gina Edwards. While there, Mrs. Edwards looked at her mother's jewelry, some of which was kept in small containers on top of a bureau. She saw some of the items of jewelry that her mother discovered to be missing the next morning after defendant left. She worried about a particularly valuable "serpentine bracelet" because Mrs. Edwards kept it in a small box on the top of her bureau, rather than in a relatively more secure location, such as her jewelry box in the bureau drawer. Mrs. Roberts testified that the bureau is only a few feet from the foot of her bed. She also described herself as a light sleeper, who would normally wake if a person were to open the door to the apartment.

Mrs. Edwards testified that she helped her mother, Mrs. Roberts, to bed that night. Mrs. Edwards said she left her mother's apartment at approximately 10:30 p.m. on the evening of June 1st, and on the outside of the apartment door left a note to defendant, the Angel Companions

2

employee who was scheduled to arrive the next morning. Defendant had never met Mrs. Roberts or worked in her apartment before. The note asked defendant, by name, to enter and wake her mother if she was still asleep. Mrs. Edwards did not remember whether she locked the door to the apartment when she left, but according to Mrs. Roberts, by ten thirty in the evening there is not much pedestrian traffic in the halls of Shannondell, as the residents "don't stay up late or [they] stay in their apartments."

The parties stipulated that about a dozen employees of Shannondell who had a master key to all of the apartments were on the premises during the evening of June 1st or the morning of June 2nd, 2012. The parties also stipulated that two un-solved thefts occurred at Shannondell, one on March 3, 2012 and the other on June 29, 2012. One was a theft of two candlesticks from a resident's apartment, and the other was a theft of personal items from the locker of a Shannondell employee.

Defendant arrived at approximately 6:00 a.m. on the morning of June 2, 2012. After she arrived, defendant did not always remain within the sight of Mrs. Roberts. One of the things defendant and other Angel Companion aides were to do for Mrs. Roberts was to make her bed. Mrs. Roberts did not specifically remember telling defendant to make the bed, but she remembered that defendant entered the bedroom to help her shower and dress. The dresser with the jewelry was to the immediate right of the entry to her bedroom.

When Mrs. Roberts was in another bedroom, she called for defendant to help her. She called several times, but defendant did not respond for approximately ten minutes. The delay seemed unusually long to Mrs. Roberts, and she wondered silently why defendant did not respond sooner. Mrs. Roberts opined that if the clothes washer and dryer were running it might have been possible that a person in another room might not have heard her first call, but would

3

have heard her subsequent calls.

While defendant was in the apartment she said something that stood out to Mrs. Roberts: that it was such a long drive to Shannondell that it was not financially worth it to have made the trip for such a short visit. Within an hour after she left, Mrs. Roberts discovered that some of her jewelry was missing: while looking for a particular piece, she noticed that "the earring box had vacancies in it." Then she looked in the containers on top of the bureau and saw that the serpentine bracelet was also missing. Mrs. Roberts testified that she wears jewelry daily and changes it daily, thus she checks her jewelry every day. She described each piece of jewelry she discovered missing, and all were gold.

When the police investigated the theft, they found that no surveillance video was available. The police did not try to obtain fingerprints from the remaining jewelry or jewelry containers. They did not attempt to "cross-reference" the employees who were working at the time of this theft with those who were working at the times of the other thefts on March 3d and June 29th.

The police contacted numerous pawn shops in the area but none reported inventory matching the descriptions of the missing pieces of jewelry. Defendant had a couple of outstanding loans from a pawn shop, but none of the items taken from Mrs. Roberts were found in her possession. A search of the call log of defendant's cell phone did not show that she had called, or received calls from, pawn shops.

The police telephoned defendant on the day Mrs. Roberts reported the theft, the same day she had gone to Mrs. Roberts' apartment. When the investigating detective identified himself and said he was calling about a theft at Shannondell, she spontaneously asked whether the theft occurred at the apartment of Mrs. Roberts. She agreed to meet with the detective to discuss the

4

theft, but said she was too busy to meet that evening, and stated that she was in a meeting and would have to call him back. She never called back. The detective called twice more before she returned his call and left a message via voice mail. When he called her back, she did not answer.

When the police arrested defendant on July 13, 2012, she agreed to answer their questions, and did so for approximately three hours. During that time she denied the allegations against her, although the detective characterized her denials as "weak."

## DISCUSSION

### I.    The verdict was supported by sufficient evidence

A person "is guilty of theft by unlawful taking or disposition 'if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.'" *Commonwealth v. Haines*, 442 A.2d 757, 760 (Pa. Super. Ct. 1982) (quoting 18 Pa.C.S.A. § 3925(a)). A person "is guilty of receiving stolen property 'if he intentionally receives, retains or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen.'" *Id.* (quoting 18 Pa.C.S.A. § 3925(a)). If the evidence is sufficient to prove the former crime, it is "necessarily" sufficient to prove the latter. *Id.*

When evaluating the sufficiency of the evidence, "the Commonwealth does not have to establish guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence. On the other hand, guilt must be proved; mere conjecture or surmise is not sufficient." *Haines* at 758-59 (quoting *Commonwealth v. Herman*, 412 A.2d 617, 619 (Pa. Super. Ct. 1979)). "It is also clear that in reviewing the evidence, we must consider it in the light most favorable to the verdict winner." *Id.*

In *Commonwealth v. Stores*, 463 A.2d 1108 (Pa. Super. Ct. 1983) the Superior Court

5

elaborated, "While a criminal conviction may rest upon wholly circumstantial evidence, it 'may not be based upon mere surmise or conjecture.' Evidence of mere presence at or near the scene of a crime is precisely the kind of circumstantial evidence that does require surmise or conjecture." *Id.* at 1112 (quoting *Commonwealth v. Berrios,* 434 A.2d 1173, 1176 (Pa. 1981) (other citation omitted). In *Haines,* the circumstantial evidence was sufficient to sustain the conviction of theft by unlawful taking, but in *Stores* it was not. A review of each opinion shows that this case is more like *Haines* than *Stores,* and the circumstantial evidence is sufficient.

In *Stores,* a jury convicted defendant of theft by unlawful taking after hearing circumstantial evidence that he stole sixteen diamond rings from a display case in the jewelry department of a department store. *Stores* at 1109. The jewelry department was at the time attended by a single sales clerk, Ms. Trott. *Id.* Ms. Trott testified that the rings were in the case when she began working that day, but she discovered them missing approximately one half hour after defendant and his companion left the jewelry department. *Id.* at 1109-10. The defendant and his companion had been leaning over the case, apparently looking at the rings. *Id.* at 1109. Ms. Trott was attending to other customers while defendant and his companion were in the store. *Id.* at 1111. Ms. Trott did not testify that she had seen the rings in the display case shortly before she saw defendant and his companion, and she did not testify that she knew the rings could not have been taken by other customers walking by the jewelry department after defendant. *Id.* at 1110-12. Ms. Trott testified that her view of the display case was, at times, blocked. *Id.* at 1112. The Superior Court reasoned that the circumstantial evidence was not sufficient to support the guilty verdict for theft by unlawful taking:

> In summary, then: The jury had evidence that appellant and his companion had had the opportunity to take the rings inasmuch as they had been in the jewelry department and had not been closely observed by Ms. Trott. But the jury also had

6

evidence that other persons either had been or might have been in the jewelry department, and that at least some of these other persons also had had the opportunity to take the rings inasmuch as they too had not been closely observed-- indeed, perhaps not observed at all--by Ms. Trott. No evidence tied any particular person to the missing rings. Apparently there were no fingerprints on the display case--at least, no evidence of any was offered. While Ms. Trott saw appellant and his companion looking at the rings, she didn't see them prying the case open, nor "what they were doing with their hands if anything[.]" Thus what the jury was left with was proof that appellant and his companion had been present at the scene of the theft of the rings-and so had other persons.

*Id.* (citations to trial record omitted, bracketed text added).

In *Haines*, the defendant was convicted after a bench trial of theft by unlawful taking after the judge heard circumstantial evidence that he stole two chain saws from a family-owned hardware store. *Haines* at 758-59. The defendant had parked his van only a few feet from a door that could only be opened by persons inside the store. *Id.* at 759. The store was attended by only one person when the defendant entered and asked for a hardware item. *Id.* The clerk walked to the rear of the store and up some stairs to find the item, and did not return for three to five minutes. *Id.* He told defendant he could not find the item, and defendant left. *Id.* The owner returned to the store within an hour and noticed that two chain saws were missing. *Id.* One of the missing saws was later recovered from a garage, where it was being repaired. *Id.* The putative buyer of the saw testified that he bought the saw from an unidentified man who said he was sent by the defendant because defendant "knew he needed a chain saw." *Id.* The defendant also testified that he did not know the name of the unidentified man. *Id.* The trial judge stated that he did not believe the defendant or the buyer, and believed the buyer purchased the saw from the defendant. *Id.*

The trial judge noted "that there was no evidence unequivocally placing the chain saws in the hands of defendant[.]" *Id.* As in *Stores*, the store clerk did not testify that he had seen the

7

chain saws shortly before defendant entered the store. And although the Superior Court opinion stated that defendant was alone in the "main store area" while the clerk was in another part of the store, on another level, searching for the hardware the defendant requested, *id.*, the opinion does not state that the clerk testified that no one else could have entered and left the store during that time. Nonetheless, the panel in *Haines* concluded, "the Commonwealth, albeit circumstantially, maintained its burden to prove beyond a reasonable doubt that defendant was guilty of theft." *Id.* The Superior Court reasoned, "the trial court's verdict was premised upon a reasonable inference from the evidence that the saws were taken during the hour defendant was in the store and from the evidence connecting the defendant to the recovered saw." *Id.* at 760.

In *Stores*, the stolen items were not recovered, hence there was no link between recovered property and the accused, as there was in *Haines*, and it appears that the link between the recovered property and the accused compensated for the lack of evidence ruling out the possibility that someone other than the accused could have entered the premises and stolen the property during the period when the theft could have occurred. In *Stores*, however, the jewelry was stolen from a department store, in an area that the public could freely enter and exit without having to walk through a door, and similarly in *Haines*, the chain saws were stolen from a hardware store the public could enter by walking through a door, and exit through one of two doors. The likelihood that someone other than the accused committed the theft is much lower in this case than in *Stores* or *Haines*, therefore the need for evidence linking the defendant to recovered property is much lower.

The evidence of record indicates that the door of Mrs. Roberts's apartment may have been unlocked between 10:30 p.m. on June 1, 2012 and 6:00 a.m. on June 2, 2012, but the evidence also indicates that it was very unlikely that anyone entered without her knowledge. She

8

stated that she was a light sleeper and would have awakened if someone opened the apartment door. The bureau where she kept her jewelry was only a few feet from her bed. Her bedroom was past her living room and at the end of a hallway inside her private apartment, which was fifty yards from the elevator on the third floor of a residential building that was only one of several on the campus. Public access was infinitesimally lower than access to a jewelry department in a department store, or to the sales area of a hardware store. If someone had entered, she was much more likely to have noticed than the store clerk in *Stores*, whose vision of the jewelry case was partially blocked, and who was distracted by other customers, or the store clerk in *Haines*, who was in another part of the building altogether. The evidence did not absolutely rule out the possibility that a person had entered the apartment unbidden and undetected during the relevant period, but the Commonwealth does not have to establish guilt to a mathematical certainty in order to produce sufficient evidence to support a guilty verdict. Therefore, the Commonwealth's failure to produce evidence linking defendant to the crime through the recovery of the stolen jewelry is not a reason to conclude that the other evidence was insufficient to prove the defendant guilty of the crimes charged.

2. **The verdict was not against the weight of the evidence**

The Supreme Court of Pennsylvania advises that

> [a] trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (quoting *Thompson v. City of Philadelphia*, 493 A.2d 669, 674 (Pa. 1985)). As for the role of the appellate courts,

9

review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Id.*

In this case, only three facts weighed against the verdict of guilt. First, Mrs. Edwards may not have locked the apartment door when she left, in which case it would have remained unlocked until defendant arrived. Second, she left a note on the door, asking defendant, by name, to let herself in. The note did not state that the door was unlocked, hence any other reader would not necessarily have assumed that the person named in the note did not have a key to the apartment. Moreover, the note expressly stated that the apartment was occupied at the time. Third, in the months before and after the theft in question, two unsolved thefts occurred at Shannondell, only one of which occurred in the apartment of another resident.

The parties stipulated that during the hours when the door was unlocked, a dozen employees who were in possession of master keys were on the campus of Shannondell. That particular stipulation should be assigned very little weight, for there is no reason to believe that an employee with a master key would have roamed the campus looking for an unlocked apartment door. To the contrary, because the testimony indicated that almost all of the residents were in their apartments during the night, an employee with a master key would have preferred to enter an apartment during the daytime, when it would be less likely that the resident of the apartment was present. One could thus infer that, of the employees with master keys, those most likely to steal from an apartment would be those who knew the schedule of a particular resident, and they would enter when they were confident the resident would be gone, most likely during

10

the day.

Based on the foregoing facts, it is of little weight that a dozen employees on the campus at the time of the theft had master keys. To the contrary, those facts suggest that none of those employees would have intentionally sought out an unlocked apartment in the middle of the night. Moreover, the note on the door did not necessarily suggest that the apartment was unlocked, but it did expressly state that it was occupied.

The likelihood that someone other than defendant stole the jewelry depends on the chance that, of all the apartments on all the floors of all the residential buildings on the Shannondell campus, someone *without* a master key just happened to: go to the building where Mrs. Roberts lived; take the elevator to the floor where she lived; walk fifty yards from the elevator, past five other doors to her apartment; surmise from the note that the door was unlocked; turn the doorknob and push open the door, disregarding the fact that the note stated the apartment was occupied; walk through the first hallway, through her living room, through the second hallway and across the threshold of her bedroom; and there, in the darkness of her bedroom, open the containers on top of the bureau, the drawer of the bureau, and the jewelry box inside that drawer, silently pick the jewelry out of the containers and jewelry box, then turn and sneak out; all without waking Mrs. Roberts, a light sleeper. It would be exceedingly unlikely if all of those conditions had been met simultaneously, just as defendant was scheduled to arrive at 6:00 a.m. for her first visit, which she gratuitously told Mrs. Roberts was barely worth it, financially, for her to have made. It would require speculation, surmise and conjecture to assert otherwise. The undersigned judge was present in the court and observed the demeanor of the witnesses as they testified, and is, based on those first-hand observations, convinced beyond a reasonable doubt that no one but defendant and Mrs. Roberts was in the apartment between the time Mrs. Edwards

11

left and the time Mrs. Roberts discovered her jewelry stolen.

## CONCLUSION

Upon consideration of the foregoing discussion, the undersigned respectfully submits that

the judgment of sentence should be affirmed.

BY THE COURT,

Wendy Demchick-Alloy, Judge

**Copy of above sent on** 6/17/14 **to:**
Robert M. Falin, Deputy District Attorney, Appellate Division; by inter-office mail
Gregory P. DiPippo, Esquire; Pizonka, Reilley, Bello & McGrory, PC; 144 E. DeKalb Street,
Suite 300; King of Prussia, PA 19406

12